## Stephen O'Brien and another v. Christopher Kusterer and others; and James Irons v. Stephen O'Brien and others.

*Landlord and tenant: Fixtures: Realty: Personalty.*  A bar, bar fixtures, cupboard, bowling-alley ways and racks, attached by a tenant to a building occupied by him as a saloon under a lease, held to be permanent fixtures, so annexed to the freehold as to belong to it and become the property of the landlord, and not to be removable by the tenant's vendees.

*Landlord and tenant: Fixtures: Personalty: Estoppel: Waiver.*  The tenant's sale of these fixtures as personalty and the taking back of a chattel mortgage upon them as such, could not by itself invest him with any new right as against his landlord, or affect the right of the landlord derived from the previous annexation of them to the freehold, in the absence of any showing that the latter in some way waived or relinquished his rights, or assented to the tenant's dealing with them as things removable.

*Heard May 7 and 8.    Decided May 13.*

Appeal in Chancery from Kent Circuit.

27 MICH.—37.

*J. W. Champlin,* for complainants in original bill.

*Jacob Ferris* and *A. T. McReynolds,* for complainant in cross-bill.

*James A. Rogers,* for defendants Kusterer and Conkey.

GRAVES, J.

On the 13th of August, 1868, the complainants in the original bill, O'Brien and Calkins, leased to the defendant Kusterer and one Werner, for three years from the 15th of the succeeding September, the east basement of Phœnix hall, in Grand Rapids, for an eating house or saloon, at a yearly rent of six hundred dollars, payable quarterly. The lessors, at considerable expense, fitted up the property with a bar and other conveniences to adapt it to the business to be carried on by the lessees. Some time in the fall the lessees entered under the lease. In some little time afterwards one Schoeding became associated with Werner, and the room was extensively altered and fitted up by the tenants with bowling-alleys, which were put down and connected with the floor and sleepers in a very substantial manner. The changes were numerous and thorough, and the character of the establishment was completely altered. In the course of a few months the defendant Kusterer united in himself the whole leasehold interest, by purchase or otherwise, and on the 24th of May, 1870, assigned to the defendant Conkey, and took back a chattel mortgage to secure three hundred and fifty dollars of the purchase price. In this transaction Kusterer assumed to sell and take back a mortgage upon the alleys and other fittings, and they were described in the mortgage as " all and singular the bar, bar fixtures, ice-box, four bowling-alleys, with the balls and pins appertaining thereto, with all the chairs and tables therein, one chandelier over the bar, two street lamps and signs, with all keys, faucets, stock on hand, and all

fixtures and furniture,—all in the Court Place saloon, so called,—in the basement of the Phœnix block, so called, on the north side of Lyon street, in said city of Grand Rapids, being the same property this day sold by said Kusterer to said Conkey, and this mortgage being given for a part of the purchase price thereof."

About June 1st, 1870, Conkey sold the same property to James Irons, the complainant in the cross-bill, for the consideration of one thousand and fifty dollars, and Irons assumed, as part of the consideration, the payment of the chattel mortgage given by Conkey to Kusterer. At this time Kusterer assured Irons that the property was "all right," and that he would "stand between him (Irons) and all harm." A controversy had previously arisen between the complainants in the original bill, O'Brien and Calkins, and Kusterer, as to the ownership of the alleys and some other things in the establishment.

O'Brien and Calkins claimed that the bar, bar fixtures, cupboard, bowling-alley ways and racks, were permanent fixtures and belonged to them as owners of the reversion, and the defendant Kusterer insisted that they were removable articles and subject to and held by his mortgage from Conkey. The mortgage becoming due, and Irons declining to pay it while the title to the property was thus in dispute, Kusterer threatened to enforce his mortgage lien and remove the property from the premises. O'Brien and Calkins thereupon filed the original bill to prevent any interference with, or removal of, the property claimed by Kusterer, and to restrain the alleged injury and waste which a removal would be likely to produce. Irons then filed the cross-bill to protect his interests as they should be affected by results.

The circuit court, in passing upon the case of the original bill, decreed that the bar, bar fixtures, cupboard, bowling-alley ways and racks were fixtures attached to the building, and owned by complainants, and awarded a perpetual

injunction; and in passing upon the cross-cause adjudged that the defendant Kusterer should pay to Irons nine hundred dollars, with interest thereon from June 24th, 1870, in the place of the fixtures.

But two questions were made on the hearing in this court. The first being whether the things in question were so annexed to the freehold as to belong to it. This question is decisively answered in the affirmative by the evidence, and it would be a waste of time to repeat it.

The second question is whether Calkins' conduct was such as to estop himself and O'Brien from claiming, against the mortgage rights of Kusterer, that the property was permanently and immovably attached, and I think upon a fair estimate of the evidence this question should be answered in the negative.

Kusterer was a tenant holding of Calkins and O'Brien when the annexations were made, and they are to be considered as made by his direction and authority, or at all events, with his sanction; and by itself, his sale of the things so annexed, as personalty, and the taking a chattel mortgage back upon them, could not invest him with any new right as against his landlord. Such a transaction, standing alone, could not affect the right of the landlord derived from the annexation. It might tend more or less to show that the tenant did not consider the fixtures immovable. But the landlord would not be concluded, unless shown in some satisfactory way to have assented to their being dealt with by the tenant as personalty, or things removable.

The fixtures now in question were made a part of the realty, so far as mechanical annexation could make them so, before Kusterer sold to Conkey and got the mortgage back; and the evidence does not show that when that annexation occurred, it was one which left the tenant at liberty to sever and remove what was annexed. When this transaction with Conkey occurred, Kusterer had no title, as

against O'Brien and Calkins, to these things as personalty, and he gained none by the mortgage from Conkey, unless O'Brien and Calkins in some way waived or relinquished their right derived from the annexation, or precluded themselves from asserting it against him, and this I think the evidence, when fairly considered, shows they did not do.

The decree below should be affirmed, with costs.

The other Justices concurred.