KELLY, J.
(concurring in part and dissenting in part). I believe that the public building exception to govern *509 mental immunity[1] extends to the design of public buildings. The duty of safe design is implicit in the duty to maintain safe buildings. This interpretation of the public budding exception is consistent with longstanding precedent of this Court. The Court should not disturb it.
THE public building exception to governmental immunity
The public building exception to governmental immunity, MCL 691.1406, states, in relevant part:
Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.
It is undisputed that the statute imposes on governmental agencies the duty to “repair and maintain” public buildings.
Accordingly, it defies logic that a governmental agency would be required to maintain a dangerously designed building and be exempted from liability for harm to the public caused by the building’s design. It must be presumed that the Legislature intended that the design of public buildings should not cause injury to people. Accordingly, I would hold that the duty to “repair and maintain” public buildings necessarily includes the duty to design safe public buildings.
MICHIGAN CASELAW ADDRESSING DESIGN DEFECT CLAIMS
My interpretation is consistent with longstanding precedent of this Court. See Bush v Oscoda Area Schools, *510 405 Mich 716; 275 NW2d 268 (1979), Reardon v Dep’t of Mental Health, 430 Mich 398; 424 NW2d 248 (1988), and Sewell v Southfield Pub Schools, 456 Mich 670; 576 NW2d 153 (1998). However, today the majority overturns this precedent. Not only do I find unpersuasive the majority’s attempt to dismiss the holding in Bush as dictum, but I disagree that Bush, Reardon, and Sewell should be overturned.
BUSH v OSCODA AREA SCHOOLS
The issue in Bush, among others, was whether the defendant public school district, its superintendent, a principal, and a classroom teacher were liable under the public building exception. Bush, 405 Mich at 724-725. The plaintiff high school student was enrolled in an introductory physical science class. Id. at 725. Although the class regularly met in a chemical laboratory equipped with safety features, because of increased enrollment, it met in a nonlaboratory room. Id. The temporary classroom lacked gas lines and gas-fired burners. Id. at 726. The students had to fill portable alcohol burners at a counter and carry them to and from their desks. Id. It was while the plaintiff student was returning her burner to the counter that an explosion occurred and she was enveloped in flames, suffering severe burns.
During the lawsuit that followed, the plaintiffs alleged that the temporary laboratory was dangerous and defective because of the improper design of the room and the absence of safety devices. Id. at 730-731. In order to determine whether the plaintiffs’ complaint was within the public building exception to governmental immunity, it was necessary to interpret MCL 691.1406. Writing for the Court, Justice CHARLES LEVIN stated:
*511 We construe the defective building provision as we have the defective highway provision. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain.
As in the highway cases, a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. [Bush, 405 Mich at 730.]
On the basis of its interpretation of the statute, the Bush Court concluded that the plaintiffs’ complaint had sufficiently stated a claim upon which relief could be granted. Id. at 733. The Court remanded the case to the trial court. Id. It was left to the trier of fact the determination whether, among other things, the classroom was defective when used as a physical science laboratory. Id. at 732. Integral to the holding was Bush’s determination that a public building may fall within the exception to governmental immunity as dangerous or defective because of improper design. Therefore, the language cited from Bush was, by definition, not dicta and constitutes binding precedent.
For the past 28 years, our courts have relied on that reasoning from Bush. In the years immediately following Bush, the Michigan Court of Appeals cited the case numerous times for the proposition that a design defect claim is actionable under the public building exception to governmental immunity. See Lee v Highland Park School Dist, 118 Mich App 305, 309; 324 NW2d 632 (1982); Young v City of Ann Arbor, 119 Mich App 512, 520-521; 326 NW2d 547 (1982); Landry v Detroit, 143 Mich App 16, 22; 371 NW2d 466 (1985).

REARDON v DEP’T OF MENTAL HEALTH

Nine years after Bush, in Reardon, this Court once again analyzed MCL 691.1406. Reardon, 430 Mich at *512 409-410. It considered carefully the first sentence of the statute, imposing a duty to “repair and maintain public buildings.” Id. at 410. It explicitly reaffirmed the holding in Bush that a building may be defective because of improper design. Id. With regard to the second sentence of the statute, the Court held that the phrase “dangerous or defective condition of a public building” showed that the Legislature intended that the exception apply in cases where the physical condition of a building causes injury. Id. at 411.
The Reardon Court specifically noted that its holding was consistent with Bush: “As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices.” Id. at 410. Therefore, when this Court had the opportunity to reexamine its interpretation of MCL 691.1406, it reaffirmed the holding in Bush that defective design is actionable under the public building exception to governmental immunity.

WILLIAMSON v DEP’T OF MENTAL HEALTH

[2]

In Williamson v Dep’t of Mental Health, the Court of Appeals cited Bush for the proposition that a building may be dangerous for the purpose of MCL 691.1406 because of improper design, faulty construction, or the absence of safety devices.[3] The panel affirmed the trial court’s finding that the building exception applied where the shower and bathing facilities of the building in question had been improperly designed. Williamson, 176 Mich App at 758-760.

*513
SEWELL v SOUTHFIELD PUB SCHOOLS

In Sewell, this Court again stated that a building may be dangerous or defective because of improper design.[4] We held that the grant of summary disposition to the defendant was improper because the plaintiff had sufficiently alleged a dangerous condition arising from faulty construction and improper design. Sewell, 456 Mich at 671-672.[5]
Therefore, the frequently repeated proposition that design defect claims fall within the public building exception to governmental immunity has become a bedrock of Michigan jurisprudence. The majority distracts attention from this fact by citing cases that this Court resolved without determining whether there was a design defect. See Hickey v Zezulka (On Resubmission), 439 Mich 408; 487 NW2d 106 (1992); de Sanchez v Michigan Dep’t of Mental Health, 455 Mich 83; 565 NW2d 358 (1997); Johnson v Detroit, 457 Mich 695; 579 NW2d 895 (1998).
However, in none of those cases did this Court overrule Bush or Sewell and hold that design defects do not fall within the public building exception. Rather, two of them, Hickey and Johnson, cited Bush for the proposition that a building may be defective because of improper design. Hickey, 439 Mich at 422; Johnson, 457 Mich at 704. This Court in de Sanchez noted that it is an “oft-cited proposition that a public building may be dangerous or defective because of its improper de *514 sign[.]” de Sanchez, 455 Mich at 96.[6] Moreover, Hickey and de Sanchez were decided before Sewell. If there had been any question about whether a design defect claim could be brought under the public building exception, Sewell resolved it.
Also, it should be noted that, had the Legislature disagreed with this Court’s interpretation of MCL 691.1406, it had many years to amend the language of the statute. Its failure to do so suggests that the Legislature’s intent was that a design defect claim be actionable under the public building exception to governmental immunity.[7]
THE ROBINSON[8] FACTORS
Because it erroneously characterizes the holding in Bush as dictum, the majority finds no need to consider the factors set forth in Robinson for deciding whether to overturn Bush. Robinson, 462 Mich at 464. But Bush’s holding that design defects are actionable under the public building exception was not dictum. Therefore, I will now review the Robinson factors.
The first consideration is whether the earlier decision was wrongly decided. Robinson, 462 Mich at 464. I *515 believe it was not. As discussed above, implicit in a duty to “maintain and repair” a public building is a duty to properly design the building. Therefore, I believe that Bush properly interpreted the public building exception as including a duty to design public buildings to be safe. Moreover, the Legislature has acquiesced in Bush’s interpretation of MCL 691.1406. This suggests that Bush correctly interpreted the statute to mean that a design defect claim is actionable.
The other Robinson factors are: (1) whether the decision at issue defies “practical workability,” (2) whether reliance interests would work an undue hardship if the authority is overturned, and (3) whether changes in the law or facts make the decision no longer justified. Robinson, 462 Mich at 464.
Bush does not defy practical workability. Rather, it has functioned as an integral part of our governmental immunity jurisprudence for the past 28 years. Conversely, reliance interests would work an undue hardship if Bush were overturned. As indicated above, it is a frequently cited proposition that design defect claims fall within the public building exception.[9] Clearly, overturning Bush will mark a drastic shift in Michigan jurisprudence.
No changes in the law or the facts render the decision unjustified. It is true that, in deciding Bush, the Court relied on the structural similarity between the public building exception and the highway exception statutes. Bush, 405 Mich at 730. It is also true that the Court in Hanson v Mecosta Co Rd Comm’rs, 465 Mich 492, 502; 638 NW2d 396 (2002), held that the highway exception does not include a duty to design or correct defects arising from the original design of highways. However, Hanson is not on point with this case. Hanson con *516 cerned the highway exception, whereas this case concerns the public building exception. Especially considering that Hanson, in my estimation, was incorrectly decided, its holding should not be extended to the public building exception.[10]
The majority also claims that Bush has been undermined by subsequent decisions of this Court. The majority notes that Bush was succeeded by Ross v Consumers Power Co (On Rehearingj,* [11] which altered the way this Court construes the governmental immunity statute. However, Ross did not overrule Bush. Moreover, Rear-don and Sewell were decided after Bush and Ross. Neither Reardon nor Sewell determined that Ross affected Bush’s holding that defective designs are actionable under the public building exception. In fact, Reardon quoted Ross in order to explain the Legislature’s rationale for enacting the governmental immunity act. Reardon, 430 Mich at 408. Reardon then reiterated the Bush holding that defective designs are actionable under the public building exception.
The majority also contends that Fane v Detroit Library Comm[12] undermines Bush. However, nothing in Fane undermines Bush’s holding that design defects are actionable under the public building exception. Fane interpreted the meaning of the phrase “of a building” in the public building exception. Fane, 465 Mich at 77-78. Fane did not interpret the phrase “repair and maintain.”
CONCLUSION
I agree with the majority’s decision to remand this case to the Court of Claims for further proceedings with *517 regard to plaintiffs’ claim that defendant failed to properly repair and maintain the public building.
But I would reaffirm the longstanding precedent of this Court that design defects are actionable under the public building exception to governmental immunity, MCL 691.1406. A duty to design safe public buildings is implicit in a duty to repair and maintain them. This interpretation of MCL 691.1406 is consistent with this Court’s longstanding precedent and, as demonstrated by a review of the Robinson factors, should not be overruled.
CAVANAGH, J., concurred with KELLY, J.

 MCL 691.1406.

 176 Mich App 752, 757; 440 NW2d 97 (1989).

 Williamson, 176 Mich App at 757, noted that Reardon reiterated this principle.

 Sewell, 456 Mich at 675, cited Hickey v Zezulka (On Resubmission), 439 Mich 408, 422; 487 NW2d 106 (1992), which quoted Bush for the proposition that a public building may he dangerous or defective because of improper design.

 Sewell has been relied on for the proposition that a building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices. See Kruger v White Lake Twp, 250 Mich App 622, 626; 648 NW2d 660 (2002).

 Although it is true that this Court opined in de Sanchez that the proposition has caused this Court difficulty, we did not disavow the proposition in that case. Rather, we noted that it was inapplicable to the facts before us.

 The majority, once again, takes issue with my use of the doctrine of legislative acquiescence. However, as I have previously noted, legislative acquiescence is a valid judicial tool for statutory interpretation. Karaczewski v Farbman Stein & Co, 478 Mich 28, 53-54; 732 NW2d 56 (2007) (Kelly, J., dissenting); see also Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 259-264; 731 NW2d 41 (2007) (Kelly, J., concurring in part and dissenting in part). Merely because some members of the Court will not use it does not render it unusable.

 Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000).

 See Lee, supra; Young, supra; Landry, supra; Reardon, supra; Williamson, supra; Hickey, supra; Kruger, supra; and Sewell, supra.

 I would also note that I dissented in Hanson, and I continue to believe that Hanson was incorrectly decided.

 420 Mich 567; 363 NW2d 641 (1984).

 465 Mich 68; 631 NW2d 678 (2001).